**<u>EXHIBIT A</u>**

**Proposed Order**

30535336.3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MEDIAMATH HOLDINGS, INC., *et al.*,[1] | ) Case No. 23-10882 (LSS) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Re: Docket No. __ |

**ORDER AUTHORIZING RETENTION OF FTI CONSULTING, INC., AS FINANCIAL ADVISORS TO THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE AS OF THE PETITION DATE**

Upon consideration of the application (the "**Application**") of the above-captioned debtors and debtors in possession (the "**Debtors**"), for an order pursuant to section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), authorizing them to retain FTI Consulting, Inc. ("**FTI**") as financial advisors; and upon the Katzenstein Declaration[2] in support of the Application; and due and adequate notice of the Application having been given; and it appearing that no other notice need be given; and it appearing that FTI neither holds nor represents any interest adverse to the Debtors' estates; and it appearing that FTI is "disinterested," as that term is defined in section 101(14) of the Bankruptcy Code; and it appearing that the relief requested in the Application is in the best interest of the Debtors' estates and their creditors; after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.      The Application is granted as set forth herein.

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MediaMath Holdings, Inc. (2425), MediaMath, Inc. (1297), MediaMath Ventures, LLC (4588), Adroit DS, LLC (0700), Searchlight MM Topco, L.P. (9412), Searchlight MM Topco GP, LLC (N/A), and Searchlight MM Holdings, LLC (5372).  The Debtors' address is MediaMath, Inc. c/o Epiq Corporate Restructuring, LLC, P.O. Box 4420, Beaverton, Oregon 97076-4420.

[2]    Capitalized terms used in this order not otherwise defined have the meanings given to them in the Application.

30535336.3

2.    In accordance with section 327(a) of the Bankruptcy Code, the Debtors are authorized to employ and retain FTI as of the Petition Date as their financial advisor on the terms set forth in the Application.

3.    FTI shall be compensated in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code and such Bankruptcy Rules as may then be applicable, from time to time, and such procedures as may be fixed by order of this Court.

4.    FTI is entitled to reimbursement of actual and necessary expenses, including legal fees related to the Application or preparation of fee applications.

5.    The indemnification provisions set forth in the Engagement Letter are subject to the following during the pendency of the Chapter 11 Cases until the earlier of (a) the effective date of a chapter 11 plan approved by this Court and (b) the entry of an order closing the Chapter 11 Cases:

a.    FTI shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services provided under the Engagement Letter, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court;

b.    Notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify FTI, or provide contribution or reimbursement to FTI, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from FTI's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of FTI's contractual obligations if this Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which FTI should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified; and

c.    If, before the earlier of (i) the the effective date of a chapter 11 plan in the Chapter 11 Cases or (ii) the entry of an order closing the Chapter 11

Cases, FTI believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, FTI must file an application therefor in this Court, and the Debtors may not pay any such amounts to FTI before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by FTI for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify FTI.  All parties in interest shall retain the right to object to any demand by FTI for indemnification, contribution, or reimbursement.

6.      FTI shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals.

7.      If there is any inconsistency between the terms of the Application, the Katzenstein Declaration, and this Order, this Order shall govern.

8.      This Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this Order.

# <u>EXHIBIT 1</u>

**Engagement Letter**

<u>PRIVATE & CONFIDENTIAL</u>

June 30, 2023

Neil Nguyen
Chief Executive Officer
MediaMath, Inc.
Four World Trade Center 45th Floor
New York, NY 10007

Re: <u>Financial Advisory Services for MediaMath, Inc.</u>

Dear Neil:

1.    **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by you, MediaMath, Inc. and certain of its affliates (collectively, the "Company"), to provide certain financial advisory serivces (the "Services") set out below.  This letter of engagement (the "Engagement") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2.    **Scope of Services**

The Services, to be performed at your direction, are expected to include the following:
- Assistance with preparation of cash and liquidity forecasts, including a rolling 13-week cash flow forecast, cash receipts and disbursement analyses, and budget vs. actual reporting;
- Assistance with daily cash management and support management with strategies to conserve cash, preserve optionality and extend liquidity runway;
- Assistance with business plan projections and scenarios as needed to support management and the Company's advisors with developing strategic and operational alternatives, realizing the value of the Company's assets, and negotiations with lenders and/or new investors.
- Assistance with contingency planning, including preparation of associated required financial and operating information, assistance with operational readiness and due diligence support for any new financing in connection with such contingency plans;
- Assistance with the development of creditor, customer and employee communication plans; and
- Provision of such other advisory services as may be agreed upon by FTI and the Company.

In the event that the Company commences chapter 11 cases, the Services will also be expected to include, but not be limited to:
- Assistance with the preparation of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;
- Aassistance with the identification and implementation of short-term cash management procedures;
- Assistance and advice with respect to the identification of core business assets and the disposition of assets or liquidation of unprofitable operations;

MediaMath, Inc.
June 30, 2023

- Assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;
- Assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;
- Attendance at meetings and assistance in discussions with potential investors, banks, the Debtor's prepetition debt holders, the Committee and any other official committee appointed in this Chapter 11 Case, the U.S. Trustee, and other parties in interest and professionals hired by the same, as requested;
- Analysis of creditor claims by type, entity and individual claim, including assistance with development of databases, as necessary, to track such claims;
- Assistance in the preparation of information and analysis necessary for the confirmation of a plan in this Chapter 11 Case; and
- Such other general business consulting or other assistance as Debtor's management or counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this Chapter 11 Case.

The Services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as outlined above, are subject to change as mutually agreed between us.

FTI is engaged by the Company to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to you and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders or others.

In the event that FTI participates in negotiations with any party on behalf of the Company, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

If cases under the Bankruptcy Code are commenced and our retention is approved, our role will include serving as principal bankruptcy financial advisors to the debtors and debtors in possession in those cases under a general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The services we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our engagement.

MediaMath, Inc.
June 30, 2023

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders.  However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

3.    **Fees and Cash on Account**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

**United States**

| | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $1045 – 1,495 |
| Directors / Senior Directors / Managing Directors | 785 – 1,055 |
| Consultants/Senior Consultants | 435 – 750 |
| Administrative / Paraprofessionals | 175 – 325 |

Hourly rates are generally revised periodically. To the extent this engagement requires services of our International divisions or personnel, the time will be multiplied by our standard hourly rates applicable on International engagements. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

In addition to the fees outlined above, FTI will bill for reasonable, documented and direct expenses which are incurred on your behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement.  Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.

**Cash on Account**

FTI will continue to maintain a retainer of $300,000, which funds will be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account").  To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the Engagement, we will refund any unused portion. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, charges, and disbursements to be incurred.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain.  Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services.  Upon transmittal of the invoice, we may immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice.  The Company agrees that invoices are due upon receipt  and will

MediaMath, Inc.
June 30, 2023

promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that FTI has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of it subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, charges and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded

MediaMath, Inc.
June 30, 2023

administrative priority under 11 U.S.C. § 503(b)(l).  The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1l29(a)(9)(A), that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment).  It is agreed and understood that the unused portion, if any, of the Initial Cash on Account (as may be supplemented from time to time) and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

If a dispute develops about our fees, the Company may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than $150,000.

4.      **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

5.      **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company and lenders. As you may be aware, FTI is regularly retained by the administrative agent and/or other members of your lending group (or law firms retained by the administrative agent or lending group members).  However, such representations are in matters unrelated to this engagement.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices globally.  We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties.  The FTI professionals providing services hereunder will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

6.      **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Heath Gray at (646) 717-3123.

Yours faithfully,

MediaMath, Inc.
June 30, 2023

FTI CONSULTING, INC.

By: _____
Heath C. Gray
Senior Managing Director

Attachment – As stated

MediaMath, Inc.
June 30, 2023

<u>Confirmation of Terms of Engagement</u>

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**

MediaMath, Inc.

By:    _____
       Neil Nguyen
       Chief Executive Officer

Date:    _____ June 30, 2023 _____

**FTI CONSULTING, INC.**

**STANDARD TERMS AND CONDITIONS**

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with MediaMath, Inc. dated June 30, 2023.   The Engagement letter and the Standard Terms and Conditions  (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.  The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.      Reports and Advice**

1.1      **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI and attached hereto as Schedule A. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.      Information and Assistance**

2.1      **Provision of information and assistance** – Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time to time.

2.2      **Punctual and accurate information** – You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required.  You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3      **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof.  Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information.  Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4      **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information.  There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material.  We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

**3.    Additional Services**

3.1    **Responsibility for other parties** – You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us.  Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.  Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

**4.    Confidentiality**

4.1    **Restrictions on confidential information** – Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. Confidential information shall not include information that:

4.1.1    is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2    is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3    is or has been independently developed by the recipient.

4.2    **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

4.3    **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4    **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5    **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

4.6    **Data Protection** - If this Engagement involves the processing of personal data (also referred to herein as personal information) (i) as governed by Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016, the terms of the EU Data Protection Schedule attached hereto as Schedule B shall apply to this engagement and it shall form an integral part of this Agreement and (ii) as governed by the California Consumer Privacy Act, the terms of the California Data Protection Schedule attached hereto as Schedule C shall apply to this engagement and it shall form an integral part of this Agreement. In the event of a conflict between the terms of this Agreement and the terms of Schedule B or Schedule C, the terms of Schedule B or Schedule C shall prevail in relation to the

processing of such personal data. If such personal data is processed in connection with this engagement, Client shall notify FTI in writing before any personal data is disclosed to FTI.

**5.    Termination**

5.1    **Termination of Engagement with notice** – Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all fees and expenses incurred by us through the date termination notice is received.

5.2    **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

**6.    Indemnification, Liability Limitation, and Other Matters**

6.1    **Indemnification** - The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted  (an "Adverse Determination").  The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance.  FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

6.2    **Limitation of liability -** You agree that no Indemnified Person shall be liable to you, or your successors, affiliates or assigns for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract.  Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

**7.    Governing Law, Jurisdiction, WAIVER OF JURY TRIAL, and Compliance with Law**

7.1    **Governing Law**The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

7.2    Jurisdiction. - The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The Bankrutpcty Court having jurisdiction over the Client's Bankruptcy case shall have exclusive jurisdictrion in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

7.3     **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

7.4     **Compliance with Laws** - The Company agrees that it will comply with all anti-corruption, anti-money laundering, anti-bribery and other economic sanctions laws and regulations of the United States, United Kingdom, European Union and United Nations (collectively, the "ABC/AML/Sanction Laws") in connection with this Engagement.  The Company further agrees that it shall not, and it shall procure its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Company or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Company or FTI. The Company shall promptly notify FTI in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by the Company or its directors, officers, employees or agents.

FTI CONSULTING, INC

**<u>Confirmation of Standard Terms and Conditions</u>**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

MediaMath, Inc.

By: _____

Neil Nguyen
Chief Executive Officer

Date: _____ June 30, 2023 _____

# **EXHIBIT B**

**Katzenstein Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MEDIAMATH HOLDINGS, INC., *et al.*,[1] | Case No. 23-10882 (LSS) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF MICHAEL KATZENSTEIN IN SUPPORT
OF APPLICATION AUTHORIZING THE EMPLOYMENT AND RETENTION OF FTI
CONSULTING, INC., AS FINANCIAL ADVISORS TO THE DEBTORS AND DEBTORS
IN POSSESSION, EFFECTIVE AS OF THE PETITION DATE**

Pursuant to 28 U.S.C. § 1746, Michael Katzenstein declares as follows:

1.      I am a Senior Managing Director with FTI Consulting, Inc. ("**FTI**").

2.      I have more than 20 years of corporate restructuring, financial advisory and interim management experience. I have restructuring and financial advisory expertise in, among others, telecommunications and other subscriber-based businesses. I have advised numerous clients, both public and private, that have involved performance improvement services, deal structuring and negotiation, business plan review, carve-out services and sell side due diligence. My services have included in-depth review of company financial statements, analysis of revenue and cost centers, operations, management, and proposed financing structures. I have been involved in numerous chapter 11 cases including, among others, as the CRO of the Zohar funds; CRO of Global Cloud Exchange, an international carrier; chapter 11 financial advisor to OneWeb, a global satellite operator; chapter 11 financial advisor to Internap, a data services provider; chapter 11

---

1      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MediaMath Holdings, Inc. (2425), MediaMath, Inc. (1297), MediaMath Ventures, LLC (4588), Adroit DS, LLC (0700), Searchlight MM Topco, L.P. (9412), Searchlight MM Topco GP, LLC (N/A), and Searchlight MM Holdings, LLC (5372). The Debtors' address is MediaMath, Inc. c/o Epiq Corporate Restructuring, LLC, P.O. Box 4420, Beaverton, Oregon 97076-4420.

financial advisor to Fuse Media, traditional and new media; chapter 11 financial advisor to Fusion Telecom, telecom services; chapter 11/CCAA financial advisor to Nortel, $4 billion cross-border bondholders, global telecoms equipment enterprise; CRO and Interim CEO, SFX Entertainment, global live events enterprise; CRO Digital Domain, special effects and media company; and CRO and Interim CEO GSI Group (now Novanta), global photonics and precision-based equipment and systems.

3.      I submit this declaration (the "**Declaration**") in support of the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of FTI Consulting, Inc., as Financial Advisor to the Debtors and Debtors in Possession, Effective as of the Petition Date* (the "**Application**"), which seeks authorization of the retention and employment of FTI as Debtors' financial advisor in accordance with the Application and the terms and conditions set forth in that certain engagement letter between the Debtors and FTI effective as of June 30, 2023 (the "**Engagement Letter**"). Except as otherwise noted, I have personal knowledge of the matters set forth herein and if called as a witness, would testify competently thereto.

4.      To the extent any information disclosed herein requires amendment or modification upon my completion of further review or as additional information becomes available to me, a supplemental declaration will be submitted to the Court.

## FTI'S QUALIFICATIONS

5.      FTI has a wealth of experience in providing financial advisory services in complex restructurings and reorganizations. FTI has an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. FTI's expertise includes liquidity and capital structure assessment, debt and equity restructuring advice, and identification of reorganization alternatives. FTI has significant experience assisting distressed companies with day-to-day management activities, including

30535336.3

2

development of pro forma financials and business plans, cash flow management, and implementation of liquidity-enhancing and cost-saving strategies.

6.      In selecting FTI, the Debtors sought an advisor with in-depth experience in providing services to distressed companies.  FTI employs seasoned professionals who have vast knowledge and experience in assisting companies experiencing financial and operational challenges, and FTI regularly assists businesses like the Debtors'.

7.      In addition to FTI's experience in the management of troubled companies, in the months leading up to the Petition Date, FTI has been developing an in-depth understanding of the Debtors' financial history, business operations, and the industry in which the Debtors operate.  Further, FTI professionals have worked closely with the Debtors, their management, and other professionals and have become well acquainted with the Debtors' operations, business, and related matters.  Accordingly, FTI has developed relevant experience regarding the Debtors that will assist FTI in providing effective and efficient services in the Chapter 11 Cases.

8.      As a result of the significant prepetition work performed on behalf of the Debtors, FTI has acquired substantial knowledge of the Debtors and their business and is intimately familiar with the Debtors' financial affairs and systems, capital structure, operations, and related matters.  During FTI's prepetition engagement, FTI assisted the Debtors' management team with, among other things, managing and forecasting the Debtors' liquidity position, preparing for the Debtors' chapter 11 filing and first day relief, and other financial analysis and planning.  I believe that such experience and knowledge will be invaluable to the Debtors throughout the Chapter 11 Cases.

9.      Further, FTI has provided similar services and personnel in cases in this District.  *See, e.g.*, *In re Zohar III, Corp.*, Case No. 18-10512 (Bankr. D. Del. June 11, 2018); *In*

*re SFX Entertainment, Inc.*, Case No. 16-10238 (Bankr. D. Del. Mar. 3, 2016); *In re Fresh & Easy, LLC*, Case No. 15-12220 (Bankr. D. Del. Nov. 20, 2015); *In re Corinthian Colleges, Inc.*, Case No. 15-10952 (Bankr. D. Del. May 27, 2015); *In re Mineral Park, Inc.*, Case No. 14-11996 (Bankr. D. Del. Sept. 23, 2014); *In re FCC Holdings, Inc.*, Case No. 14-11987 (Bankr. D. Del. Sept. 22, 2014); *In re Digital Domain Media Grp., Inc.*, Case No. 12-12568 (Bankr. D. Del. Oct. 31, 2012); *In re Cadence Innovation LLC*, Case No. 08-11973 (Bankr. D. Del. Sept. 18, 2008).

10.    Going forward, during the Chapter 11 Case, the Debtors seek to continue FTI's engagement as their financial advisor because FTI has substantial knowledge of the Debtors' financial and operational conditions, and experience with chapter 11 proceedings.

## SERVICES TO BE PROVIDED

11.    Prior to the Petition Date and pursuant to the Engagement Letter, FTI provided such consulting and advisory services:[2]

- Assistance with preparation of cash and liquidity forecasts, including a rolling 13-week cash flow forecast, cash receipts and disbursement analyses, and budget vs.actual reporting;

- Assistance with daily cash management and support management with strategies to conserve cash, preserve optionality and extend liquidity runway;

- Assistance with business plan projections and scenarios as needed to support management and the Company's advisors with developing strategic and operational alternatives, realizing the value of the Company's assets, and negotiations with lenders and/or new investors.

- Assistance with contingency planning, including preparation of associated required financial and operating information, assistance with operational readiness and due diligence support for any new financing in connection with such contingency plans;

---

[2]    The summary of the Engagement Letter included in this Declaration is provided for convenience only and is qualified in its entirety by reference to the Engagement Letter.  To the extent that this Declaration and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

30535336.3

- Assistance with the development of creditor, customer and employee communication plans; and

- Provision of such other advisory services as may be agreed upon by FTI and the Company.

12.     In addition, the Engagement Letter provides that if a case under the Bankruptcy Code is commenced, and FTI's retention is approved, FTI's role will include serving as principal bankruptcy financial advisors to the Debtors.  To this end, those services include but are not limited to the following:

- Assistance with the preparation of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

- Assistance with the identification and implementation of short-term cash management procedures;

- Assistance and advice with respect to the identification of core business assets and the disposition of assets or liquidation of unprofitable operations;

- Assistance to the Debtor in the preparation of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

- Assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

- Assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

- Attendance at meetings and assistance in discussions with potential investors, banks, the Debtor's prepetition debt holders, the Committee and any other official committee appointed in this Chapter 11 Case, the U.S. Trustee, and other parties in interest and professionals hired by the same, as requested;

- Analysis of creditor claims by type, entity and individual claim, including assistance with development of databases, as necessary, to track such claims;

- Assistance in the preparation of information and analysis necessary for the confirmation of a plan in this Chapter 11 Case; and

- Such other general business consulting or other assistance as Debtor's management or counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this Chapter 11 Case.

## <u>PROFESSIONAL COMPENSATION</u>

13.     In consideration of the Services to be provided by FTI, subject to the Court's approval, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any applicable orders of the Court, and pursuant to the terms and conditions of the Engagement Letter, FTI will seek payment for compensation on a fixed fee basis, plus reimbursement of actual and necessary expenses incurred by FTI, including legal fees related to the Application or preparation of fee applications (if any), as approved by the Court.  I believe that the fee structure as set forth in the Application is reasonable and comparable to those generally charged by financial advisors and consultants of similar stature to FTI for comparable engagements, both in and out of chapter 11.

14.     According to FTI's books and records, during the ninety days before the Petition Date, FTI received $901,488.00 in the aggregate for prepetition services performed and to be performed (in the form of cash on account), corresponding to fees and expenses under the Engagement Letter. FTI's current estimate is that it has received unapplied advance payments from the Debtors in the amount of $74,200,50.  The Debtors and FTI have agreed that any portion of the unapplied advance payments not used to compensate FTI for its pre-petition services and expenses will be held by FTI during the Chapter 11 Cases and applied against FTI's final post-petition billing and will not be placed in a separate account.

15.     To the best of my knowledge, (a) no commitments have been made or received by FTI with respect to compensation or payment in connection with the Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code and (b) FTI has no agreement with any other entity to share with such entity any compensation received by FTI in connection with the Chapter 11 Cases.

## INDEMNIFICATION

16.     The terms of the Engagement Letter, including its indemnification provisions, were fully negotiated between the Debtors and FTI at arm's length.  I believe that the Engagement Letter's indemnification provisions, as modified by the Proposed Order, are customary and reasonable for financial advisory and consulting engagements, both in and out of chapter 11, and in the best interests of the Debtors, their estates, and their creditors.

## FTI'S DISINTERESTEDNESS

17.     In connection with the preparation of this Declaration, FTI conducted a review of its contacts with the Debtors, their affiliates, and certain entities holding large claims against or interests in the Debtors that were made reasonably known to FTI.  A listing of the parties reviewed is reflected on Schedule A to this Declaration.  FTI's review, completed under my supervision, consisted of a query of the parties listed on Schedule A within an internal computer database[3] containing names of individuals and entities that are present or recent former clients of FTI.  A summary of such relationships that FTI identified during this process is set forth on Schedule B to this Declaration.

18.     Based on the results of its review, except as otherwise discussed herein, FTI does not have a relationship with any of the parties listed on Schedule A in matters related to the

---

[3]  For the avoidance of doubt, FTI's computer database covers FTI Consulting, Inc. and its wholly-owned subsidiaries globally.

Debtors or the Chapter 11 Cases.  FTI has provided and could reasonably be expected to continue to provide services unrelated to the Debtors or the Chapter 11 Cases for the various entities listed on <u>Schedule B</u>.  FTI's assistance to these parties has been related to providing various financial advisory, litigation support, technology, strategic communications, and economic consulting services.  To the best of my knowledge and except as otherwise disclosed herein, no services have been provided to these parties in interest that involve their rights in the Chapter 11 Cases, nor does FTI's involvement in this case compromise its ability to continue such consulting services.

19.    In addition to the disclosures on Schedule B, FTI discloses the following:

- FTI's United Kingdom subsidiary has been engaged by MediaMath UK Limited ("**Media Math UK**"), a direct subsidiary of Debtor MediaMath, Inc., to prepare to act as liquidator in its voluntary liquidation (the "**UK Engagement**"), subject to approval by its creditors.

- FTI's Australian subsidiary has / or may soon be engaged by MediaMath Australia Pty Ltd. ("**Media Math Australia**"), direct subsidiary of Debtor MediaMath, Inc., to act as liquidator in the client's voluntary liquidation (the "**Australia Engagement**" and together with the UK Engagement, the "**Non-US Engagements**").

20.    Media Math UK and Media Math Australia may have claims against Debtor MediaMath, Inc., which Debtor MediaMath, Inc. would include in its Schedule of Assets and Liabilities as liquidated, non-contingent, and non-disputed claims. If Media Math UK or Media Math Australia disagree with the scheduled amount of their respective claims and file proofs of claim in the Chapter 11 Cases, no FTI personnel will assist with the preparation or filing of any such proofs of claim. To the extent any other disputes arise between, on one hand, the Debtors, and on the other hand, Media Math UK or Media Math Australia (each, an "Internal Dispute"), FTI personnel will not provide services to the Debtors, Media Math UK, or Media Math Australia relating to any Internal Dispute.

21.    FTI also notes the possibility of additional retentions by other subsidiaries of the Debtors, in addition to the current Non-US Engagements (the "**Additional Retentions**"). In the event of any Additional Retentions, FTI's involvement with the Additional Retentions will not compromise its ability to effectively provide its services to the Debtors or other engaged subsidiaries of the Debtors.

22.    In addition to the foregoing, FTI has also implemented the following procedures to protect confidential client information:

i.    each FTI professional (each a "**Debtor Engagement Professional**" and collectively, the "**Debtor Engagement Professionals**") working on behalf of the Debtors (the "**Debtor Engagement**") shall acknowledge in writing that he or she may receive certain nonpublic information and that he or she is aware of these procedures and will follow these procedures;

ii.    no individual who works on, or worked on, the Non-US Engagements shall (A) serve as a Debtor Engagement Professional, (B) provide any advice or services to the Debtor Engagement or (C) directly or indirectly share with the Debtors or the Debtors' professionals any nonpublic information generated by, received in connection with, or relating to the Non-US Engagements;

iii.    Debtor Engagement Professionals shall not directly or indirectly share any nonpublic information generated by, received from, or relating to the Debtors or the Chapter 11 Cases with anyone who is not a Debtor Engagement Professional, except that a good-faith communication of publicly-available information or disclosures in accordance with the statutory duties of officeholders in the Non-US Engagements shall not be presumed to be a breach of the obligations of FTI or any Debtor Engagement Professionals under these procedures;

iv.    FTI is setting up electronic internal security walls to ensure that only Debtor Engagement Professionals and other employees involved with or working on the Debtor Engagement have access to the electronic files relating to the Debtor Engagement, and to ensure that none of the Debtor Engagement Professionals or other employees involved with or working on the Debtor Engagement may have access to the electronic files relating to the Non-US Engagements; (v) consistent with its ordinary course compliance practice, FTI will periodically audit these security walls and related software for compliance; and

   v.  FTI shall immediately disclose to Debtor's counsel and the U.S. Trustee any material breaches of these procedures.

If FTI ceases to act as advisor to the Debtors, it will continue to follow the procedures set forth above until a plan has been confirmed in these Chapter 11 Cases or these Chapter 11 Cases have been converted or dismissed. For the avoidance of doubt, nothing in this paragraph 20 shall be interpreted or understood to prohibit or otherwise restrict ordinary course communications or exchanges of information between the Debtors and the Debtor Engagement Professionals on one hand and Media Math UK, or Media Math Australia and the FTI professionals working on the Non-US Engagements on the other hand, *provided that* any such communications or information exchanges do not concern an Internal Dispute.

  23.  As part of its diverse practice, FTI appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties-in-interest in the Debtors' Chapter 11 Cases.  Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in the Chapter 11 Cases.  In addition, FTI has in the past, may currently and will likely in the future be working with or against other professionals involved in the Chapter 11 Cases in matters unrelated to the Debtors and the Chapter 11 Cases. Based on my current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which FTI is to be employed, and none are in connection with the Chapter 11 Cases.

  24.  FTI is not a "creditor" of any of the Debtors within the meaning of Bankruptcy Code section 101(10). Further, neither I nor any other member of the FTI engagement team serving the Debtors, to the best of my knowledge:  (a) is a creditor, equity security holder, or

30535336.3

insider of any of the Debtors; (b) is or has been within two years before the Petition Date, a director, officer, or employee of any of the Debtors; or (c) has any interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. As such, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, FTI (i) is a "disinterested person" as defined in Bankruptcy Code section 101(14) and (ii) neither holds nor represents an interest adverse to the Debtors or their estates. Therefore, FTI believes it is eligible to represent the Debtors under Bankruptcy Code section 327(a).

25.     It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner.  If any new material relevant facts or relationships are discovered or arise, FTI will file a supplemental declaration pursuant to Bankruptcy Rule 2014(a).

## NO DUPLICATION OF SERVICES

26.     The Debtors and FTI intend that FTI's services will be appropriately directed by the Debtors so as to avoid duplication of efforts among the other professionals retained in these chapter 11 cases and performed in accordance with applicable standards of the profession. FTI will work collaboratively with the Debtors' other professionals to avoid duplication of services among professionals.  I believe that the services to be provided by FTI will complement and will not be duplicative of any services of the Debtors' other professionals.

30535336.3

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: July 13, 2023.          _/s/ Michael Katzenstein_____
                                     Michael Katzenstein
                                     FTI Consulting, Inc.

## SCHEDULE A

### Potential Parties in Interest

**Debtors**
MediaMath Holdings, Inc.
MediaMath, Inc.
MediaMath Ventures LLC
Searchlight MM Holdings LLC
Searchlight MM Topco L.P.
Searchlight MM Topco GP, LLC
Adroit DS, LLC

**Non-Debtor Affiliates**
Media Math Australia Pty Ltd.
MediaMath France EURL
MediaMath Germany GmbH
MediaMath India PL
MediaMath Japan KK
MediaMath Publicdade Digital Ltda.
MediaMath Singapore Pte Ltd.
MediaMath Spain S.L.
MediaMath UK Limited
Ventures Terminal Mexico, SA de SV

**Professionals**
FTI Consulting, Inc.
Epiq Corporate Restructuring LLC
Young Conaway Stargatt & Taylor, LLP
Goldberg Kohn Ltd.
Houlihan Lokey
Hilco Receivables, LLC
Richards Layton & Finger
Focus Management Group USA

**Banks**
Silicon Valley Bank
Wells Fargo
Barclays Bank PLC
DBS Bank Ltd.
Banco Santander (Brasil) S.A.
Banco Santander (Mexico) S.A.
Bank of America

**Lenders**
Goldman Sachs

Searchlight CST, L.P.
Hamilton Lane (Strategic Opportunities Fund)
Hamilton Lane (New York Credit Co-Investment Fund)
Spring Lake
Observatory Capital (MM), LLC
Stelvio LLC

## Material Vendors & Contract Counterparties

Colossus Media LLC
Research and Development Marketing Lab (EUR)
SmartClip
Samba TV
Wunderkind Corporation
Platform One Inc. (YieldOne)
Smartyads Inc
Lotame Solutions, Inc

## Top 30 Unsecured Creditors

Magnite, Inc.
Pubmatic Inc
Sonobi Inc
Xandr Inc. (Appnexus Inc.)
Adswizz
Smart AdServer
TripleLift, Inc.
Azerion Technology B.V. (formerly Improve Digital International) (Euro)
4 World Trade Center LLC
LiveRamp (Acxiom)
Index Exchange Inc
OpenX
Google, Inc (MM)
DoubleVerify
GumGum
Unruly Group US Holding Inc
MadHive, Inc.
Oracle  (Grapeshot Limited)
Presidio Holdings Inc
Yahoo Ad Tech JV LLC (Verizon Media Inc)
Yieldlab
Eyeota PTE LTD
T-Mobile USA, Inc. (Pushspring)
Gravy Analytics, Inc
Google- Affiperf
Foursquare Labs, Inc. (formerly Factual Inc.)
AdColony (Opera Mediaworks, Inc.)
Freewheel (USD)

BidSwitch Gmbh
Oracle America (Blue Kai, Inc.)

**<u>Top Customers</u>**
Butler Till
Neo- IBM
Havas HM Infinitum LLC
Improve Digital B.V.
Havas Programmatic Hub
Home Depot International, Inc.
Digilant
Swarovski
Macy's
FanDuel
Mastercard
T-Mobile Marketing Solutions
Dell
Coca Cola Mexico
Staples
Mattel
JackpotJoy (Simplicity Malta Limited)
Realestate.com.au
K12
Audigent
Good Apple Digital MM
Interactive Avenues India
Headway Digital
Huddled Masses
Resonate Networks

**<u>Insurance Providers</u>**
Willis of New Jersey
National Fire Insurance Company of Hartford
Trisura Specialty Ins. Cop.
Valley Forge Ins. Co.
Continental Ins. Co.
National Casualty Company (Nationwide)
Argonaut Insurance Company
Axis Insurance Company (Admitted)
Federal Insurance Co. Chubb
Syndicate 2623/623 at Lloyd's (Beazley)
Starr Surplus Lines Insurance Company
Westfield Specialty Insurance Company
Scottsdale Insurance Company (Nationwide)
Allied World Surplus Lines Ins. Comp
Bowhead Specialty Insurance

XL Specialty Insurance Co. Policy
American Casualty Company of Reading Pennsylvania
Continental Casualty Company
National Union Fire Insurance Company of Pittsburgh, Pa
Willis Towers Watson Northeast, Inc

**Landlords**
445 North Wells Limited Partnership
90 New Montgomery Partners
4 World Trade Center LLC
Morgan Stanley Real Estate Advisor, Inc.
Bespoke Managed Space Borough Limited
Derwent London No.4 Limited
Ventures Terminal Mexico
Wilh. Werhahn KG Branch office of Haus & Grund
Pay Perform Limited
Energy CX, LLC
Hub International, Services, Inc.
Clear Street Management, LLC
Business Airport Merguro

**Utility Companies**
BCM One (Wholesale Carrier Services)
Kastle New York LLC
ComEd
Cogent

**Directors & Officers**
Neil Nguyen
Grant Lyon
Darren Glatt
Timothy Austin
Ingrid Hackett
Christine Napoli
Miller Reben
Deyanirr Solorio Nocetti
Andrew Laurence
Viktor David Zawadzki
Wong Ying Cheeng
David C. Reed
Andrew McKelvie

**Equity Holders**
Searchlight CST, L.P.
Spring Lake Equity Partners LLC
Spring Lake/MM Co-Investment III LLC

30535336.3

Observatory Capital (MM), LLC
Stelvio LLC
Goldman Sachs
Zawadzki Enterprises, LLC
Zawadzki No. 1, LLC
Occams Razor, LLC
Joseph Zawadzki
2011 Family Trust
Observatory Capital (MM)-C, LLC
Invesco

**Government Agencies/Taxing Authorities**
IRS
New York State Department of Taxation and Finance

**Judges**
Dorsey, John T.
Goldblatt, Craig T.
Horan, Thomas M.
Owens, Karen B.
Shannon, Brendan L.
Silverstein, Laurie Selber
Stickles, J. Kate
Walrath, Mary F

**Office of the United States Trustee**
Andrew R. Vara
Benjamin Hackman
Christine Green
Denis Cooke
Diane Giordano
Dion Wynn
Edith A. Serrano
Hannah M. McCollum
Holly Dice
James R. O'Malley
Jane Leamy
Joseph Cudia
Joseph McMahon
Juliet Sarkessian
Lauren Attix
Linda Casey
Linda Richenderfer
Michael Panacio
Nyanquoi Jones
Ramona Harris

30535336.3

Richard Schepacarter
Rosa Sierra-Fox
Shakima L. Dortch
Timothy J. Fox, Jr.

30535336.3

**SCHEDULE B**

**Disclosures**

**Current Clients**

Axis Insurance Company (Admitted)
Banco Santander (Mexico) S.A.
Bank of America
Barclays Bank PLC
Continental Casualty Company
DBS Bank Ltd.
Dell
DoubleVerify
Federal Insurance Co. Chubb
Goldberg Kohn Ltd.
Goldman Sachs
Goldman Sachs
Google, Inc (MM)
Hamilton Lane (New York Credit Co-Investment Fund)
Hamilton Lane (Strategic Opportunities Fund)
Invesco
IRS
Macy's
MadHive, Inc.
Mastercard
Mattel
MediaMath Australia Pty Ltd.
MediaMath UK Limited
MediaMath, Inc.
National Casualty Company (Nationwide)
National Union Fire Insurance Company of Pittsburgh, Pa
Richards Layton & Finger
Scottsdale Insurance Company (Nationwide)
Staples
Starr Surplus Lines Insurance Company
T-Mobile USA, Inc. (Pushspring)
Wells Fargo
XL Specialty Insurance Co. Policy
Young Conaway Stargatt & Taylor, LLP

**Former Clients**

Houlihan Lokey

30535336.3

## **EXHIBIT C**

### **Dispute Resolution Procedures**

The following procedures shall be used to resolve any controversy or claim ("**dispute**") as provided in the Application. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

### **Mediation**

A dispute shall be submitted to mediation by written notice to the other party or parties. In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations. The mediator will be selected by agreement of the parties. If the parties cannot agree on a mediator, a mediator will be designated by the American Arbitration Association ("**AAA**") or JAMS/Endispute at the request of a party. Any mediator so designated must be acceptable to all parties.

The mediation will be conducted as specified by the mediator and agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute.

The mediation will be treated as a settlement discussion and therefore will be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings.

Each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties.

### **Arbitration**

If a dispute has not been resolved within ninety (90) days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration and judgment on the award rendered by the arbitration may be entered in any Court having jurisdiction thereof. The arbitration will be conducted in accordance with the procedures in this document and the Arbitration Rules for Professional Accounting and Related Services Disputes of the AAA ("**AAA Rules**").